**CENTROPOLIS CRUSHER COMPANY,**
Plaintiff,

v.

**E. O. BOOKWALTER, District Director**
**of Internal Revenue, Defendant.**

**No. 10267.**

United States District Court
W. D. Missouri, W. D.

Dec. 5, 1958.

**34**

Madden & Burke, Kansas City, Mo., for plaintiff.

Edward L. Scheufler, U. S. Atty., Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., Thomas J. McCoy, Jr., Atty., Tax Div. Justice Dept., Washington, D. C., for defendant.

R. JASPER SMITH, District Judge.

This cause having come on before the Court, sitting without a jury, on the 6th day of November, 1958, and the Court having heard all the evidence and examined all the exhibits, and being fully advised in the premises thereof, hereby enters the following Findings of Fact and Conclusions of Law herein.

### Findings of Fact.

1. Plaintiff is, and has at all times relevant hereto been, a corporation duly organized under the laws of the State of Missouri having its principal place of business at Kansas City within the Western Division of the Western District of Missouri.

2. Defendant is, and has at all times relevant hereto been, a resident of the Western Division of the Western District of Missouri and has held throughout such period the office of District Director of Internal Revenue at Kansas City, Missouri.

3. On December 15, 1955 plaintiff filed with defendant its duly executed claims for refund of certain income taxes paid by it to defendant for the taxable years 1950, 1951, 1952 and 1953; such claims were denied for defendant on February 13, 1956.

4. The grounds upon which such refunds were sought and upon which this suit is based are plaintiff's contentions that the products it mined during each of the years in question were "metallurgical" and "chemical grade limestone," and that it is, therefore, entitled under Section 114(b) of the Internal Revenue Code of 1939, to a depletion deduction equal to fifteen percentum of its "gross income from the property," limited to "50 per centum of the net income of the taxpayer from the property"; and that, furthermore, that the income from all of plaintiff's operations must be included in such "gross income from the property" as derived from "ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products."

5. At all times relevant hereto the business of plaintiff has been that of mining and processing into a marketable state limestone from a natural deposit operated by it.

6. The deposit from which plaintiff mined its product during each of the years in question, known as the Bethany Falls Formation, consists of a limestone of a relatively high calcium content, yielding at least the equivalent of 95% pure calcium carbonate.

7. Although no arbitrary standard can be accepted, metallurgical or chemical grade limestone is, in general, a term applied in the industry to high grade limestone, that containing a relatively high calcium carbonate content and free from toxic impurities, suitable for numerous metallurgical and chemical uses.

8. The limestone produced by plaintiff was, during each and all of the years in question, of a metallurgical and chemical grade.

9. For most chemical uses the market requires that limestone be reduced to the finely ground form.

10. The commercially marketable mineral product (or products) from plaintiff's deposit is limestone ground to eight distinct and uniformly graded sizes known as 2″, 1¼″, ¾″, ½″, ⅜″, buckshot, dust, and finely ground.

11. The market demands for ground limestone are such as to require a tight and uniform gradation of the product into each of these sizes, including the finely ground.

12. The processes used by plaintiff to obtain the foregoing are and were at all times:

(a) blasting;

(b) transportation to primary crusher;

(c) grinding in primary crusher;

(d) grinding in secondary crusher or hammer mill;

(e) automatic screening;

(f) grinding in roller mill.

13. This entire crushing process, from the time the stone is dumped into the primary crusher until the finely ground material emerges from the roller mill, is automatic, resulting in the eight uniform and tightly graded sizes required by the industry.

14. All of the above processes, including the grinding in the roller mill, are the ordinary processes normally applied by crushed limestone producers to obtain their commercially marketable product (or products).

15. After emerging from the roller mill, a small percentage of Plaintiff's finely ground limestone is bagged to meet the special demand of a customer, the greater portion of this size being sold in bulk.

16. Under these circumstances bagging is not an "ordinary treatment process," and any additional charge to the customer for the special bagging service and bags is to be eliminated from plaintiff's "gross income from the property."

17. If plaintiff is entitled to a percentage depletion deduction of fifteen percentum, and if the income from all its treatment processes, other than bagging, be included in its "gross income from the property," as herein held, the parties have agreed that judgment herein should be for the plaintiff in the amount of $39,810.55 with interest thereon at 6% per annum from the dates of payment, as provided by law.

18. The defendant E. O. Bookwalter acted at all times with probable cause in performing or causing to be performed each of the acts of which complaint is here made.

Conclusions of Law.

1. This Court has jurisdiction of these parties and this subject matter under the provisions of Section 1340 of Title 28 U.S.Code.

2. The instant claims for refund were filed within the time prescribed by Section 6511(a) and this proceeding was brought within the time provided by Section 6532(a) of the Internal Revenue Code, 26 U.S.C.A. §§ 6511(a), 6532(a).

3. Any standard which arbitrarily limits the meaning of "metallurgical grade limestone" or "chemical grade limestone" to those stones containing 95% or more calcium carbonate conflicts with the commercially understood and accepted meaning of those terms and, therefore, the meaning with which those terms are used in Section 114(b) of the 1939 Code.

4. "Chemical grade limestone" and "metallurgical grade limestone" as those terms are used in the Act of October 20, 1951, 65 Stat. 497, 26 U.S.C. (I.R. C.1939) § 114(b) means limestone of a relatively high calcium carbonate content.

5. The limestone mined by plaintiff in each and all of the years in question was "chemical grade limestone" and "metallurgical grade limestone" within the meaning of that Act.

6. Any Regulations of the Treasury Department, particularly T.D. 6031, Regs. III, Sec. 29(m)–5, in conflict with such meaning are void and of no effect.

7. The "commercially marketable mineral product or products" within the

meaning of Section 114(b), I.R.C.1939, of plaintiff's mining operation was and is crushed limestone in eight distinct and graded sizes.

8. All the processes, including fine grinding, employed by plaintiff in obtaining such product (or products) within the meaning of Section 114(b) are and were "the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products."

9. Under the instant record, the income attributable to bags and bagging must be excluded from plaintiff's "gross income from the property."

10. Plaintiff is, therefore, entitled to judgment in the sum of $39,810.55, together with interest thereon at the rate of six percent per annum from the dates of payment, as provided by law.