E. O. BOOKWALTER, District Director of Internal Revenue, Appellant,

v.

CENTROPOLIS CRUSHER COMPANY, Appellee.

No. 16214.

United States Court of Appeals Eighth Circuit.

Dec. 15, 1959.

James P. Turner, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellant.

John A. Biersmith, Jr., of Madden & Burke, Kansas City, Mo., for appellee.

Before GARDNER, VOGEL, and MATTHES, Circuit Judges.

GARDNER, Circuit Judge.

Appellee, a Missouri corporation engaged in the business of mining, processing and selling chemical and metallurgical grade limestone, on December 15, 1955 filed with appellant, District Director of Internal Revenue, claims for refund of certain income taxes paid to appellant for the taxable years 1950, 1951, 1952, and 1953. The claimed refunds were based on the taxpayer's contentions that (1) its mineral deposit was a chemical and metallurgical grade limestone entitled to a 15 per cent depletion allowance under Section 114(b) (4) (A) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 114(b) (4) (A); and (2) all of the taxpayer's operations, including fine grinding and bagging, were "ordinary treatment processes normally applied by mine owners and operators in order to obtain the commercially marketable mineral product or products." These claims being denied, the present refund suit was brought. The parties hereinafter will be referred to as Taxpayer and Director.

In its refund action Taxpayer based its right to recover upon the same contentions asserted in its claim for refund. These contentions were put in issue by the Director's answer. The action was tried to the court without a jury.

The fact that Taxpayer mined, processed and sold chemical and metallurgical grade limestone is not contested by the Director. There is no substantial conflict in the pertinent evidence. The evidence showed that the Taxpayer sold ap-

proximately 80 per cent of its limestone without fine grinding, and that the sales price received by Taxpayer for its finely ground limestone was approximately $5 per ton. The sales price received for the limestone which was not in finely ground form was $1.48 to $1.50 per ton. The process employed by Taxpayer, so far as here material, is reflected in the court's findings as follows:

"For most chemical uses the market requires that limestone be reduced to the finely ground form.

"The commercially marketable mineral product (or products) from Plaintiff's deposit is limestone ground to eight distinct and uniformly graded sizes known as 2″, 1¼″, ¾″, ½″, ⅜″, buckshot, dust, and finely ground.

"The market demands for ground limestone are such as to require a tight and uniform gradation of the product into each of these sizes, including the finely ground.

"The processes used by Plaintiff to obtain the foregoing are and were at all times:

(a) blasting;

(b) transportation to primary crusher;

(c) grinding in primary crusher;

(d) grinding in secondary crusher or hammer mill;

(e) automatic screening;

(f) grinding in roller mill.

"This entire crushing process, from the time the stone is dumped into the primary crusher until the finely ground material emerges from the roller mill, is automatic, resulting in the eight uniform and tightly graded sizes required by the industry.

"All of the above processes, including the grinding in the roller mill, are the ordinary processes normally applied by crushed limestone producers to obtain their commercially marketable product (or products).

"After emerging from the roller mill, a small percentage of Plaintiff's finely ground limestone is bagged to meet the special demand of a customer, the greater portion of this size being sold in bulk.

"Under these circumstances bagging is not an 'ordinary treatment process,' and any additional charge to the customer for the special bagging service and bags is to be eliminated from Plaintiff's 'gross income from the property.' "

Based on these findings the court concluded that Taxpayer was entitled to recover the depletion allowances calculated upon the basis of gross income derived from its finished product, except the income attributable to the bagging, which should be excluded from Taxpayer's "gross income from the property" in figuring depletion allowances. Pursuant to these findings the court entered judgment in favor of Taxpayer.

In seeking reversal the Director contends that the court erred in allowing the Taxpayer to include in its "gross income from mining" under Section 14(b) (4) of the Internal Revenue Code of 1939 the income attributable to the fine grinding of limestone in a roller mill.

This same contention was urged on behalf of the Government in Commissioner of Internal Revenue v. Iowa Limestone Co., 8 Cir., 269 F.2d 398, 401, wherein Judge Van Oosterhout, speaking for this Court in an exhaustive opinion citing and reviewing many authorities, answers to our satisfaction every argument advanced on behalf of the Director in the instant case. In the course of that opinion it is said, inter alia:

"The scope of the depletion deduction is governed solely by the statutes authorizing the deduction. Our problem is largely one of statutory interpretation. We now look to the controlling statutes.

"Section 23(m), 26 U.S.C.A. § 23 (m), authorizes the deduction from gross income from mining of 'a reasonable allowance for depletion * * * according to the peculiar conditions in each case * * *.' The statutory provision authorizing percentage depletion for minerals is

section 114(b) (4), which reads in part:

" '* * * *Percentage depletion for coal and metal mines and for certain other mines and natural mineral deposits.*

" '(A) *In general.* The allowance for depletion under section 23 (m) in the case of the following mines and other natural deposits shall be—

\* \* \* \* \*

" '(iii) in the case of \* \* \* chemical grade limestone \* \* \* 15 per centum,

\* \* \* \* \*

of the gross income from the property during the taxable year \* \* \*.'

"Section 114(b) (4) (B) defines 'gross income from property' as being 'gross income from mining,' and defines the word 'mining' as used therein 'to include not merely the extraction of the ores or minerals from the ground but also the ordinary treatment processes normally applied by mine owners or operators in order to obtain the commercially marketable mineral product or products.' \* \* \* Courts in interpreting section 114(b) (4) (B) have uniformly held that the formula prescribed by the statute is clear and unambiguous, and that the depletion base to be used is the sale price of the first commercially marketable mineral product or products, provided that the processes applied, which are of a manufacturing nature rather than a mining nature, are the processes normally applied by mine owners to obtain the commercially marketable product."

In the instant case the court found:

"The commercially marketable mineral product (or products) from Plaintiff's deposit is limestone ground to eight distinct and uniformly graded sizes known as 2″, 1¼″, ¾″, ½″, ⅜″, buckshot, dust, and finely ground. \* \* \* All of the above processes, including the grinding in the roller mill, are the ordinary processes normally applied by crushed limestone producers to obtain their commercially marketable product (or products)."

These findings are not only presumed to be correct but they are sustained by uncontradicted evidence. The pertinent facts in the instant case cannot be distinguished from those in Commissioner v. Iowa Limestone Co., supra. In this connection it is worthy of note that the opinion of the trial court in the instant case, Centropolis Crusher Co. v. Bookwalter, D.C.Mo., 168 F.Supp. 33, is cited with approval in Commissioner of Internal Revenue v. Iowa Limestone Co., supra, and in fact counsel for the Director makes no attempt to distinguish them. Thus it is stated in brief of counsel for the Director:

"The Government's interpretation of the statutory language and legislative intent is that there is a single commercially marketable mineral product for each of the named minerals, so that all taxpayers who mine that mineral will receive a comparable percentage depletion deduction regardless of whether they actually sell the product normally marketed in the industry or sell a more refined or a manufactured product. \* \* \* However, this view was recently presented to this Court in Commissioner v. Iowa Limestone Co. [8 Cir., 269 F.2d 398], and to the Court of Appeals for the Seventh Circuit in Cannelton Sewer Pipe Co. v. United States [268 F.2d 334], and was decided adversely to our position. Accordingly, while we feel that this rationale applies with equal force to the instant case and reserve the right to urge such position in any subsequent review of this case in the Supreme Court, *it is assumed* (emphasis supplied) that this Court will adhere to its recent opinion in the Iowa Limestone case, \* \* \*."

Entertaining the view that we will adhere to our decision in Commissioner of Internal Revenue v. Iowa Limestone Co.,

supra, as being the applicable law in the instant case, it is difficult to understand the purpose of this appeal.

The decision of the trial court in the instant case is certainly sustained by our decision in Commissioner of Internal Revenue v. Iowa Limestone Co., supra, and the authorities therein cited. In these circumstances further discussion as to the applicable law would seem to be supererogatory. The judgment appealed from is therefore affirmed.